## GREINER et v PERRY

Ohio Appeals, 2nd Dist, Clark Co

No 313.   Decided Feb 6, 1933

Cole, Bowman & Hodge, Springfield, for plaintiff in error.

Raphael J. Quirk, Springfield, for defendant in error.

**KUNKLE, J.**

Counsel have favored the court with briefs in which portions of the testimony are discussed and various authorities are cited.

We have read the record in this case with care for the purpose of ascertaining the facts disclosed thereby. We shall not attempt to quote in detail from the testimony. It will be unnecessary so to do, as counsel are thoroughly familiar with the same.

We have referred to the pleadings in some detail. We have done so for the purpose of calling attention to the issues actually raised by the pleadings.

This case was presented upon the theory that the plaintiffs in error were responsible for the injury which was done to the automobile of defendant in error by reason of the fact that they, viz., Carl Greiner and W. Bryan Little, were partners engaged in the business of commercial aviation and were using said Municipal Airport as their principal place of business under the name of Little-Greiner Air Service. The case proceeded upon the theory that Edward Selders was the agent of the said partnership and that such partners were therefore

liable for the negligence of their agent Selders.

It must be kept in mind that this is an action in tort. It is not an action based upon a contract either express or implied, but the basis of this action is the tort, that is, the negligence of Edward Selders.

What might be sufficient to estop persons from denying a partnership in a case of contract is wholly different from showing liability in case of a tort.

We have examined the briefs of counsel with care and find no authorities cited therein holding that individuals could be held as partners in an action in tort where no partnership existed and where such partnership was sought to be established solely by testimony tending to show that they had held themselves out as partners.

We have made some independent examination of the question and have found no reported decision holding that individuals may be held as partners in an action for tort where no partnership existed and where the testimony merely tended to show a holding out of themselves as partners. There may be decisions to that effect, but we did not find them.

For the purposes of this case, however, it is not necessary to hold that individuals may not be liable as partners in an action in tort by merely holding themselves out as such partners.

The issue raised by the pleadings is that an actual partnership existed between Carl Greiner and W. Bryan Little. The testimony fails to disclose that any partnership existed between Greiner and Little. The case was tried, however, upon the theory that Greiner was estopped by reason of his conduct from denying that a partnership existed.

It will be observed that under the pleadings the question of estoppel is not raised.

Under the rule announced in **Ohio Jurisprudence, Vol. 16, pages 900 and 901** and the many authorities cited therein, if estoppel is relied upon it must be plead.

We will assume however that this question was properly before the court and jury. We think the record clearly shows that at the time in question, viz., September 16, 1928, and at no time prior thereto did any partnership exist between Carl F. Greiner and Bryan Little. The record discloses the interest that Greiner took in aviation and that he owned the airplane in equestion; that Little was what might be termed a pioneer in aviation and for a fixed sum was giving Greiner a course of flying lessons; that Greiner permitted Little to use his air-

plane free of charge for the carrying of passengers but not for the purpose of teaching students and that Greiner received no part of the moneys Little earned thereby nor any moneys from Little's operations; that Greiner paid none of Little's expenses and shared none of his losses and that they had no agreement or understanding between them except that Greiner paid Little a somewhat reduced price for his flying lessons and allowed Little to use his airplane for the purposes above stated; that they had talked about some future arrangement but that nothing was accomplished until in November, 1928, substantially two months after the accident in question, when a corporation was formed known as The Little-Griener Air Service, Incorporated.

The record shows that the defendant in error through the cross examination of the plaintiffs in error attempted to establish a partnership by estoppel in that Greiner had held himself out to the public as a partner and therefore should be estopped from denying the partnership.

Assuming, however, that the record discloses such acts of holding themselves out as partners by plaintiffs in error as would estop them from denying that a partnership existed, if the cause of action was based upon a contract this would not solve the case for the reason that it is not claimed that the defendant in error or her son, who was in charge of her automobile at the time in question, had ever seen any such publications or ever heard that Greiner had either directly or indirectly allowed himself to be held out as a partner. There is no claim in the record that the defendant in error knew that her son upon the date in question was going to take her automobile to the airport or as above stated that either she or her son had ever heard of any conduct upon the part of Greiner indicating that he was a partner or in any way connected with the airport.

In **36 Oh St, p. 135**, in the case of **Cook v Penrhyn Slate Company** the third paragraph of the syllabus is as follows: .

"3. Where the conduct of a party is relied upon to charge him as a member of a firm of which he is not in fact a member, it should appear that the creditor relied on such conduct, and trusted the firm on the faith of such party being a member."

The record in this case is entirely silent upon the features necessary to bring the

defendant in error within the reasoning of the above syllabus.

In 47 Corpus Juris, page 712 (§107) the rule is announced as follows:

"Persons not partners inter se can be subjected to liability because of a holding out only when a person seeking to hold such partners liable dealt with the ostensible partnership in the belief that the parties were partners."

Reference has been made to page 732 of Vol. 47 of Corpus Juris in regard to partnership by estoppel. This paragraph is as follows:

"A finding in favor of an estoppel to deny a partnership liability may be sufficiently supported by evidence of representations by the new party estopped, either by statements made by him, or in his presence, or by his conduct, that the representations made came to the other party's knowledge and that he relied upon it."

Under this text, it is necessary that such representations came to the other party's knowledge and that they relied upon them. These elements are wholly lacking in the case at bar.

The rule governing cases wherein an attempt is made to hold an individual as a partner upon the ground that he was held out as such partner is well stated in 20th Ruling Case Law, §513, as follows:

"The modern doctrine is that an alleged partner cannot be held liable as such on a contract made by the partnership with those who had no knowledge of the holding out, at the time the transaction was entered into, for as to such persons he is not estopped to deny the partnership relation, and persons holding themselves out as partners are liable only to those who have been misled and have acted on the faith of the appearance thus produced, or given credit to an apparent partnership in ignorance of the actual facts, and in the belief that those held out as partners were in fact members of the firm. Such holding out is immaterial as against a third person who had knowledge also of the real relation of the parties and that no partnership in fact existed. In all cases third persons seeking to enforce liability as a partner or one who has held himself out as such must exercise due diligence in ascertaining the facts, and must have a reasonable ground for believing that the person he seeks to hold as a partner was a member of the firm."

Many errors are complained of, among them the charge of the trial court upon the question of partnership by estoppel.

The court undertook to charge the jury upon this subject and we think the charge as given is incomplete and therefore misleading. The charge should have defined what in law would constitute a partnership by estoppel, namely, not merely a holding out but a communication either directly or indirectly to the injured party of such holding out and the further fact that the person complaining was injured by relying upon such holding out.

From a consideration of the entire record, we can not escape the conclusion that the verdict is not supported by the testimony; that the trial court erred in the above instruction and that the verdict is against the manifest weight of the evidence.

Entertaining these views, the judgment will be reversed and the cause remanded.

HORNBECK, J, concurs.

ALLREAD, PJ, dissents:

The issue upon which Griener was held was his connection with the partnership or firm name of Little-Greiner Air Service. It appears that the air service on the flying field consisted of service by Little in teaching students as to the use of an airplane. Among these students was Carl F. Greiner, who had his own plane and whom Little taught for a reduced price on that account. It was also agreed between Greiner and Little that Little was to use Greiner's areoplane for passenger service.

September 16, 1928, Greiner and Little and a student by the name of Edwin Selders were sitting in the office. This office, according to all the testimony, was a small room. Greiner called the attention of Little to the fact that if his, Greiner's aeroplane were pulled up along the road there might be occasion for the use of it for passenger service. Little said he would go and get it, but Selders, who was in the small office, said to Little that he would go and get it and bring it up. This conversation took place within the hearing of Greiner and no objection from any one was made as to Selders' getting the aeroplane and bringing it forward along the highway. In moving the aeroplane Selders, negligently pulled the throttle out and allowed the aeroplane to proceed to where the machines, including the one owned by plain-

692

tiff in the court below, were parked and struck the machine so owned by Agnes Perry and injured it. Sometime after this incident the Little-Greiner Company was incorporated. There is evidence in the record tending to prove that at the time of the accident the unincorporated name of the Little-Greiner Air Service was the name in use at the airport by Little and Greiner. It is not definitely shown that this name was used prior to the incorporation or prior to the time of the accident for any special purpose or that any contracts were made under that name. Some time prior to the accident the name was used in the newspapers for advertising purposes. This is practically the only use to which the name was ever put, but it is contended that the use of the name even for advertising purposes was enough to make out a partnership upon the doctrine of estoppel. And it was upon that theory that the trial court permitted the case to go to the jury, overruled the motion for a new trial and rendered judgment upon the verdict.

We have considered the questions presented in this case. They are not without difficulty. The testimony may be briefly referred to. On page 21 Little testifies as follows:

"Q. What is it Mr. Greiner told you as to having the plane advanced? A. The three of us were in the office building, and Mr. Greiner said, 'I think if you get the plane toward the front part of the field, you might get some passengers.' I said, 'I will go and get it,' and Selders said, 'Let me go,' and I said all right to go."

Page 23: "Q. When Mr. Greiner told you to taxi the plane from the back to the front of the field, was it your plane or Mr. Greiner's? A. It was Mr. Greiner's.

"Q. Then you were using Mr. Greiner's plane to carry passengers? A. Yes, I only taught Mr. Greiner, I didn't use it to teach.

"Q. But you used his plane in which to carry passengers? A. Yes."

Greiner testified as follows:

Page 75: "Q. Did you permit the term 'Little-Greiner Air Service' to be used? A. I think it was used at that time, but I would not state positively."

This referred to a time prior to the accident.

Page 77: "Q. Notwithstanding you were going under the name of the Little-Greiner Air Service? A. No; my idea was simply to promote aeronautics in Springfield. I want to see flying here and had no idea of making money out of it; just wanted to get it going and making flying instruction available to people here. * * *

"Q. Why did you permit your name to be used in connection with it? A. It sounded like a good name.

"Q. Were there any legal papers drawn up prior to the time of the incorporation? A. No papers whatever."

Page 79: "Q. You permitted him (Selders) to go down and taxi your plane from the back to the front of the field? A. Mr. Little was more or less in charge of flying. I suggested it be brought down first, and Mr. Selders overheard the conversation, and asked permission to bring the plane down for Mr. Little.

"Q. It was your plane? A. Yes.

"Q. And you permitted this boy to go down and pilot it—"

P. 101: "Q. Did you notice for months prior to the accident a continual reference to the Little-Greiner Flying Service? A. No, not for months.

"Q. How long? A. I imagine that term was used by the reporters for possibly a month.

"Q. Did you deny it? A. No, sir."

Selders testified as follows:

"Q. What was the trade name of that company at the time you were taking your lessons? A. The Little-Greiner Flying Service."

This temporary organization under the name of "The Little-Greiner Air Service" was prior to the accident and prior to the incorporation of the company. It was a temporary partnership between the date of the adoption of the name in the statement given out to the newspapers and the regular incorporation of the company. The trial court charged as to the essential elements of the case and as to the necessity for a regular organization of the corporation to hold the incorporated company. The trial court charged in effect that the adoption of a name such as Little-Greiner Air Service would in effect create a partnership, or at least a joint adventure by estoppel, or what is called in law an ostensible partnership; that if this arrangement was found to exist there would be sufficient upon which to

hold the partnership and the individual members thereof for damages for injury to the plaintiff's automobile. The doctrine upon which a partnership by estoppel is sufficient to hold the partnership and the individual members thereof for damages is sustained by the text in 47 Cor. Jur., p. 732 and in 20 R.C.L., p. 317.

The doctrine of a partnership is usually applied to establish the right of one of such firm to bind absent members in favor of a creditor. In the case at bar there was no absent member to be bound. The suggestion that the plane be brought down to the highway originated with Mr. Greiner. He made the suggestion which culminated in his partner bringing a plane down to the highway where it might be used for passenger service. The partner, Mr. Little, was about to bring the plane down but finally it was agreed by Little in the apparent hearing of Mr. Greiner that Mr. Selders should be allowed to bring the plane down. This was done in such a way as to cause the injury to plaintiff's machine. There is no doubt in my mind that the record justifies the holding that the partnership, consisting of Mr. Greiner and Mr. Little, acted through Mr. Selders, but it also justifies the holding of the parties individually, and as the petition is broad enough to hold both as partners and as individuals, I think that the judgment is correct.

I also am of opinion that the charges were properly given and that there is no prejudicial error in the record, that the amount of the verdict is not excessive, and that the judgment should be affirmed.